### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MELANIE L. W.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 3:19-cv-1255-GCS[2]** |
| | ) | |
| COMMISSIONER of SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### PROCEDURAL HISTORY

Plaintiff applied for DIB in October 2016, alleging a disability onset date of January 1, 2012. She later amended her date of onset to September 24, 2016, the day after a prior application had been denied.[3] After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application in November 2018. (Tr. 14-26). The Appeals

---

[1]    Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]    This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 8, 15).

[3]    The denial of the prior application stands as a final determination that Plaintiff was not disabled as of the date of that decision. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

ISSUE RAISED BY PLAINTIFF

Plaintiff raises one issue, that the ALJ did not properly evaluate her mental residual functional capacity ("RFC").

APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The claimant bears the burden of proof at steps one through four.

Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy.  *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)(internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above.   Plaintiff was insured for DIB only through December 31, 2016.   He determined that Plaintiff had

not worked at the level of substantial gainful activity between the alleged onset date of September 24, 2016, through the date last insured. She was born in 1972 and was 44 years old on the date last insured.

The ALJ found that Plaintiff had severe impairments of bi-polar disorder, anxiety disorder, degenerative disc disease of the lumbar spine, and obesity. The ALJ found that Plaintiff had the RFC to do light work, limited to low stress, simple, routine tasks with no teamwork jobs.

Based on the testimony of a vocational expert, the ALJ found that Plaintiff was not able to do her past work as a home attendant or dietary aide. She was able to do other jobs that exist in significant numbers in the national economy, leading to a finding that she was not disabled.

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by Plaintiff.

**1.    Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in August 2018. (Tr. 36). Plaintiff testified that she was diagnosed as manic depressive bipolar and had anxiety issues as well. She said she could not think straight, forgot things, and cried for no reason. She had issues getting along with people in the workplace. She said these problems existed before her date last insured. (Tr. 41-42). Her medications helped "a little bit" depending on the day. (Tr. 44).

**2.      Relevant Medical Records**

Plaintiff received mental health treatment at Centerstone.   The records begin in 2014.  (Tr. 345).   Plaintiff was seen by Dr. Habib at Centerstone in July 2016, about two months before the alleged onset of disability.   Plaintiff reported that she was doing well, and her mood was stable.   She denied manic or hypomanic symptoms as well as depression.   She reported no crying or feelings of hopelessness.   Mental status was normal.   Concentration was fair and memory was intact.   Her status was "improved." (Tr. 440-441).   The findings at the prior visits in February and May 2016 had been much the same.  (Tr. 442-447).

Plaintiff was assessed by a counselor, April Foiles, at Centerstone in July 2016. Ms. Foiles noted that Plaintiff was cooperative, with a normal mood and full affect.   Her thought process was logical.   Memory was intact and she had no deficits in attention. (Tr. 430).

Dr. Habib saw Plaintiff in February 2017, shortly after her date last insured. Plaintiff's mother was undergoing chemotherapy, and Plaintiff reported problems with her mother's attitude toward her.   On exam, her appearance was within normal limits and her affect and mood were appropriate to content.   She was cooperative.   Memory was intact and she was able to maintain focus on the interview.   Her train of thought was goal-directed and logical.   (Tr. 917-918).   The next month, Plaintiff reported that she was doing better.   She denied manic or hypomanic symptoms as well as significant depression.   Mental status exam was normal.   (Tr. 919-920).

Counselor Tammy Straeter assessed Plaintiff in May 2017.   Her findings were the

same as Ms. Foiles' had been in July 2016.   (Tr. 905-906).

### 3.       State Agency Consultants' Opinions

In December 2016 and January 2017, two state agency consultants assessed Plaintiff's mental RFC based on a review of the record.   Both concluded that Plaintiff had no severe mental impairments.   (Tr. 115-117, 126-128).

### ANALYSIS

Plaintiff recognizes that she must demonstrate that she was disabled within a narrow window of time, between September 24 and December 31, 2016, in order to prevail.   *See* (Doc. 18, p. 3).   Her argument hangs on the ALJ's finding at step three that she had a moderate limitation in maintaining concentration, persistence or pace.   From this, she argues that cases such as *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), and *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), mandate that the ALJ include additional unspecified limitations in the RFC assessment.   She is incorrect.

First, the cases cited by Plaintiff are inapposite.   In *Moreno*, the state agency reviewing consultant concluded that the plaintiff had a moderate limitation in maintaining concentration, persistence or pace, and the treating doctor documented such problems in his treatment notes.   *See Moreno*, 882 F.3d at 729.   Similarly, in *O'Connor-Spinner*, the state agency reviewing consultant concluded that the plaintiff had a moderate limitation in maintaining concentration, persistence or pace, and the ALJ included that limitation in his RFC assessment, but omitted it from the hypothetical question.   *See O'Connor-Spinner*, 627 F.3d at 617.   Here, in contrast, both state agency reviewing consultants concluded that Plaintiff had no severe mental impairments at all,

and her treating doctor and counselors documented normal mental status exams.

Further, the ALJ here limited Plaintiff to low stress, simple, routine tasks with no teamwork jobs, which goes farther than the limitation to simple work with few changes that was at issue in the cases cited by Plaintiff.   And, the ALJ here explained at step three that mental status exams showed intact memory, attention, and concentration, which led him to conclude that she could sustain simple work.   (Tr. 18).   The ALJ later explained that the Centerstone records during and after the period in issue reflected intact memory, concentration, insight and judgment and "only minimally abnormal mental status examination findings," and her mental symptoms were stable and generally controlled with medications.   (Tr. 23).

Plaintiff points out that Dr. Habib diagnosed bipolar disorder and prescribed medication.   *See* (Doc. 18, p. 5).   That is correct, but the diagnosis and prescribed medications in no way mandate mental limitations beyond those assessed by the ALJ, particularly where Dr. Habib and the counselors documented normal mental status exams, including intact memory and attention.[4]

No healthcare provider documented difficulties with concentration or memory. Plaintiff testified that she had problems in those areas, but the ALJ was obviously not bound to accept her testimony and Plaintiff has not challenged the ALJ's weighing of her credibility.   The medical evidence that Plaintiff points to in her brief does not undermine the ALJ's mental RFC assessment.   On the contrary, the medical evidence supports the

---

[4]      Counselor Straeter offered her opinion regarding Plaintiff's RFC in April 2017.   (Tr. 588-591). The ALJ explained why he rejected that opinion at Tr. 23.   Plaintiff does not argue that the ALJ erred in rejecting Ms. Straeter's opinion.

ALJ's conclusion.

## CONCLUSION

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATE: August 14, 2020.**

Digitally signed
by Judge Sison
Date: 2020.08.14
11:41:43 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**